IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD GONZALES,

    Petitioner,                    No. CIV S-06-02186 GEB CHS P

    vs.

D. K. SISTO, Warden, et al.,

    Respondents.                 FINDINGS AND RECOMMENDATIONS

    _____/

I.    INTRODUCTION

    Petitioner Richard Gonzales is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the January 24, 2006, decision by the Board of Parole Hearings (hereinafter Board) finding him unsuitable for parole. Petitioner claims that the Board's decision violated his right to due process by finding him unsuitable for parole and by delaying his hearing. Upon careful consideration of the record and the applicable law, the undersigned will recommend that this petition for habeas corpus relief be denied.

II.    PROCEDURAL AND FACTUAL BACKGROUND

    A.    Facts

    Petitioner was convicted of second degree murder and sentenced to a term of 15-

1

years to life on September 7, 1988. The Board recited the facts of petitioner's commitment offense as follows:

> PRESIDING COMMISSIONER FARMER: Thank you. As I indicated, we will first start by discussing your commitment offense and I'm going to enter into the record the description of that offense as is contained in the 2005 board report which reads as follows. On June 10th, 1987 at approximately 10:30 P.M. California Highway Patrol officers responded to a call of an injury traffic collision on Interstate 405 north of Sam Kenyon (phonetic) Avenue. Upon arrival, they were informed by paramedics that the victim, Christopher Spurney, spelled S-P-U-R-N-E-Y, was still pinned in the over turned vehicle and was deceased. The other driver, Richard Gonzales, was being attended by the paramedics and was noted bleeding from his face and leg. Gonzales was later transported to Western Medical Center where he [was] placed under arrest. A blood sample drawn one hour after the collision resulted in a .14 blood alcohol level. Subsequent investigation revealed that inmate Gonzales drove from his place of employment to a co-workers, Lyle Glantz, spelled G-L-A-N-T-Z, house around one P.M. where he ate a sandwich and drank a couple of beers. He went back to work and returned to his co-worker's residence at [about] seven P.M. Witnesses estimated that [he] had consumed at least a six pack of beer. A report stated at one point during the party at Glantz' house, Gonzales produced two lines of cocaine which he and several individuals consumed. Witnesses to the accident related that Gonzales was traveling south bound when suddenly he veered onto the shoulder, over corrected and went out of control and crossed all lanes of south bound traffic. He veered into the center median and continued across the median directly into the north bound oncoming traffic colliding with Mr. Spurney's vehicle. Mr. Spurney was killed instantly due to massive head and internal injuries. That same report recites [petitioner's] version of what occurred as follows. Inmate Gonzales stated that his statement to the probation officer is an accurate version of what happened. On June 10th, 1987 Gonzales brought a six pack to his friend's house for a birthday celebration. He admitted consuming the latter within three hours and snorted one half of a line of cocaine which one of the guys bought. He also took part of a joint of marijuana being passed around. At around 9:30 he left for home. Other than feeling very tired he felt fine. He thought of not driving due to - - thought of not driving due to - - and the thought of not driving due to intoxication did not even enter his mind. He has no recollection of the actual collision but remembers waking up in his car just after the accident.

/////

Answer, Exhibit B at 14-16.

On January 24, 2006, the Board held a life parole consideration hearing for

2

petitioner. Id. at 4. At the conclusion of that hearing the Board found petitioner unsuitable for parole due primarily to his failure to address his alcoholism. Id. at 74-83.

    B.      State Habeas Review

On May 31, 2006, petitioner petitioned the Orange County Superior Court for a writ of habeas corpus. Answer, Ex. E at 5. That petition was denied on June 22, 2006, in a reasoned opinion. Id. at 2-4. Petitioner then petitioned the California Court of Appeal, Fourth Appellate District, which summarily denied that petition on July 28, 2006. Answer, Ex. F at 2. Petitioner sought the review of the California Supreme Court on August 4, 2006. Answer, Ex. G at 3. That petition was denied on September 20, 2006. Id. at 2. Mr. Gonzales filed this federal petition on October 3, 2006.

III.    APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

IV. DISCUSSION OF PETITIONER'S CLAIMS

    A. Due Process

        1) Description of Claim

Petitioner argues that the Board's decision violated his due process rights because the decision was based on the unchanging facts of the commitment offense and not supported by "some evidence." Petition at 4.

        2) State Court Opinion

The Orange County Superior Court rejected this claim finding that:

> Contrary to Petitioner's arguments, the [Board's] determination was supported by relevant, reliable evidence. It pointed to the following factors which supported its conclusion: Petitioner's alcoholism, his prior convictions, his failure to address his alcohol abuse even after being convicted and placed on probation twice before the fatality, his failure to address his alcohol abuse even after the fatality, his escalating pattern of criminal conduct, his failure to truly work the AA recovery program, his failure to follow the instructions he received at his previous parole hearing, and Petitioner's "passive" parole plans. Thus, the [Board's] denial of parole was adequately supported and therefore was not a violation of due process or statutory law.

/////

Answer, Ex. E at 4.

        3) Applicable Law

The Due Process Clause of the Fourteenth Amendment prohibits state action that

4

deprives a person of life, liberty, or property without due process of law. A person alleging due process violations must first demonstrate that he or she was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion, 306 F.3d at 901 (quoting Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)). In this regard, it is clearly established that California's parole scheme provides prisoners sentenced in California to a state prison term that provides for the possibility of parole with "a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." Irons v. Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; and Allen, 482 U.S. at 377-78 (quoting Greenholtz, 442 U.S. at 12)). Accordingly, this court must examine whether the deprivation of petitioner's liberty interest in this case violated due process.

It has been clearly established by the United States Supreme Court "that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' Sass, 461 F.3d at 1128-29 (citing Superintendent v. Hill, 472 U.S. 445, 457 (1985)); see also Biggs, 334 F.3d at 915 (citing

McQuillion, 306 F.3d at 904), or is "otherwise arbitrary," Hill, 472 U.S. at 457.

When assessing whether a state parole board's suitability decision was supported by "some evidence," the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Thus, this court must:

> look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" in [petitioner's] case constituted an unreasonable application of the "some evidence" principle articulated in Hill.

Id.

California law requires that the Board "determine whether a prisoner is presently too dangerous to be deemed suitable for parole based on the 'circumstances tending to show unsuitability' and the 'circumstances tending to show suitability' set forth in Cal.Code. Regs., tit. 15 § 2402(c)-(d)." Irons, 505 F.3d at 662-63.

The Irons court described the regulations as follows:

> [T]he circumstances tending to show that a prisoner is unsuitable include: (1) the commitment offense, where the offense was committed in "an especially heinous, atrocious or cruel manner"; (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others"; (4) commission of "sadistic sexual offenses"; (5) "a lengthy history of severe mental problems related to the offense"; and (6) "serious misconduct in prison or jail." Cal.Code. Regs., tit. 15 § 2402(c). Circumstances tending to show that a prisoner is suitable for parole include: (1) the prisoner has no juvenile record; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has shown remorse; . . . (6) the prisoner lacks any significant history of violent crime; . . . (8) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release"; (9) "[i]nstitutional activities indicate an enhanced ability to function within the law upon release." Cal.Code. Regs., tit. 15 § 2402(d).

Id. at 663 n.4.

In California, the overriding concern in determining parole suitability is public safety and the focus is on the inmate's current dangerousness. In re Dannenberg, 34 Cal. 4th 1061, 1086 (Cal. 2005); In re Lawrence, 44 Cal. 4th 1181, 1205 (Cal. 2008). The California

6

Supreme Court recently stated:

> [T]he Penal Code and corresponding regulations establish that the fundamental consideration in parole decisions is public safety [and] the core determination of "public safety" . . . involves an assessment of an inmate's *current* dangerousness. . . . [A] parole release decision authorizes the Board (and the Governor) to identify and weigh only the factors relevant to predicting "whether the inmate will be able to live in society without committing additional antisocial acts." These factors are designed to guide an assessment of the inmate's threat to society, *if released*, and hence could not logically relate to anything but the threat *currently* posed by the inmate.

In re Lawrence, 44 Cal. 4th at 1205-06 (internal citations omitted). Accordingly, in reviewing a decision by the Board to deny parole to an inmate, "the relevant inquiry is whether some evidence supports the decision of the Board that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." Id. at 1212 (citing In re Rosenkrantz, 29 Cal. 4th 616, 658 (Cal. 2002); In re Dannenberg, 34 Cal. 4th at 1071; In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).

"The 'some evidence' standard is minimally stringent," and a decision will be upheld if there is any evidence in the record that could support the conclusion reached by the fact-finder. Powell, 33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986). However, "the evidence underlying the [ ] decision must have some indicia of reliability." Jancsek, 833 F.2d at 1390. See also Perveler, 974 F.2d at 1134. Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Toussaint, 801 F.2d at 1105. The question is whether there is any reliable evidence in the record that could support the conclusion reached. Id.

    4)  Discussion

Petitioner argues that the Board relied solely on the circumstances of his commitment offense and that those circumstances are not relevant and reliable evidence that he

7

"is currently an unreasonable risk of danger to society." Petition at 24.

The circumstances of the commitment offense are one of fifteen factors relating to an inmate's unsuitability or suitability for parole under California law. Cal. Code. Regs., tit. 15 § 2402(c)(1)-(d). When denial is based on these circumstances the California courts have stated that:

> A prisoner's commitment offense may constitute a circumstance tending to show that a prisoner is presently too dangerous to be found suitable for parole, but the denial of parole may be predicated on a prisoner's commitment offense only where the Board can "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released. [In re] Dannenberg, 34 Cal.4th [1061] at 1071, 23 Cal.Rptr.3d 417, 104 P.3d 783 (Cal.2005). Factors beyond the minimum elements of the crime include, inter alia, that "[t]he offense was carried out in a dispassionate and calculated manner," that "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and that "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Cal.Code. Regs., tit. 15 § 2402(c)(1)(B), (D)-(E)."

/////

Irons, 505 F.3d at 852-53; see also In re Weider, 145 Cal.App.4th 570, 588 (2006) (to support denial of parole, the "factors beyond the minimum elements of the crime" "must be predicated on "some evidence that the particular circumstances of [the prisoner's] crime-circumstances beyond the minimum elements of his conviction-indicated exceptional callousness and cruelty with trivial provocation, and thus suggested he remains a danger to public safety.")

The relevant inquiry therefore "is not merely whether an inmate's crime was especially callous, or shockingly vicious or lethal, but whether the identified facts are probative to the central issue of current dangerousness when considered in light of the full record before the Board or the Governor." In re Lawrence, 44 Cal. 4th at 1221; In re Dannenberg, 34 Cal. 4th at 1070-71.

In its denial the Board noted that its decision was "a product of the enormity" of petitioner's alcoholism and his "failure to truly come to grips and understand that." Answer, Ex.

B at 75. The Board found that it is "absolutely necessary" that petitioner totally adopt a program of recovery given his history of alcoholism and the nature of the crime. Id. at 76. The Board also voiced its disappointment that these issues were addressed at petitioner's last hearing and since then "little has changed." Id. at 76-77. Perhaps most clearly, the Board found that petitioner had "failed to demonstrate the kind of commitment to recovery that is needed in order to assure this panel that [he] would be safely released into society." Id. at 77.

Petitioner started consuming alcohol when he was 14. Id. at 43. Prior to the commitment offense petitioner had three convictions for driving under the influence ("DUI"). Id. at 16. Even after his third conviction for DUI petitioner was drinking every day. Id. at 44-45. While out on bail for the commitment offense, petitioner was cited for possession of alcohol and marijuana. Id. Petitioner has suffered five alcohol related convictions, the last of which occurred after his alcoholism caused a person's death. Petitioner's alcoholism contributed to his failed marriage and he admits that he has never been able to stay sober for more than "a couple of weeks" outside of custody. Id. at 46-47.

Despite the severity of his problem, petitioner acknowledges that while he regularly attends Alcoholics Anonymous, he has not done any of the steps. Id. at 48. His plan to remain sober when faced with the challenges of the outside world was to "not drink." Id. at 47. When the Board pressed him about how he would deal with the challenges of finding employment and dealing with rejection he admitted that he did not "see any problem with that." Id. at 52.

Petitioner's alcoholism was central to his crime and his inability to deal with his alcoholism is probative of his current dangerousness. Thus the Board based its determination not merely on the unchanging facts of petitioner's commitment offense, but the relationship between those facts and petitioner's continued failure to adequately address his alcoholism. Review of the record reveals that the Board's determination is fully supported.

Petitioner goes on to argue that the Board "failed to consider overwhelming

1  evidence that petitioner does not present an unreasonable risk of danger to society if released"

2  citing the many factors supportive of his release. Petition at 30. The Board however

3  acknowledged petitioner's many accomplishments concluding that he has been in many respects

4  a "model prisoner." Answer, Ex. B at 75-76. Nevertheless the Board found that petitioner's

5  "notable deficiency is in that area which is most critical and has the greatest relationship to this

6  commitment offense." Id. at 76.

As the Board stated:

> What we're telling you sir is you need to aggressively engage and understand what being an alcoholic is all about. One person died because you were. You were told three times, every time you got a drunk driving conviction, they told you that you needed to address the problem of alcohol. Then somebody died, nobody else needs to die but you've got to be more aggressive in your approach to AA.

Id. at 80.

After review of the entire record, the Board's determination of unsuitability is fully supported. Because the decision of the Board is supported by evidence in the record its finding was not unreasonable and therefore not a violation of the right to due process. Petitioner is therefore not entitled to relief on this claim.

### B.  Delayed Hearing

#### 1) Description of Claim

Petitioner claims that on June 24, 2003, he was denied a parole suitability hearing for two years. Petition at 39. He argues that because his subsequent suitability hearing occurred more than two years after June 24, 2003, the Board's subsequent finding was invalid and violated his right to due process of law. Id.

#### 2) State Court Opinion

The Orange County Superior Court rejected this claim stating:

> Petitioner's argument his hearing was invalid because it was delayed six months is based on his view that Penal Code section 3041.5, subdivision (b) creates a mandatory time frame for parole

> hearings. That section, however, merely states the hearing shall be *scheduled*, it does not mandate that the hearing be *held*. This view is validated by the power to manage it (sic) own affairs vested in the Department of Corrections and the BPH (formerly the Board of Prison Terms) by the Legislature. (See, e.g., Pen. Code, §3040.) Petitioner does not present any controlling authority for the proposition that delaying a hearing invalidates its findings.

Answer, Ex. E at 4.

        3)      Applicable Law and Disccusion

To the degree petitioner is arguing the alleged delay in holding his subsequent parole hearing violated state law, his claim is insufficient to merit habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Whitfield v. Vaughn, 2008 WL 836931 (9th Cir. Mar.27, 2008) (claim that BPH "failed to set a parole hearing within time frame mandated by California law" alleged only a state law violation not cognizable on federal habeas).

In order to establish a constitutional violation, petitioner must prove that any delay was both unreasonable and prejudicial. See United States v. Santana, 526 F.3d 1257, 1260 (9th Cir.2008); Meador v. Knowles, 990 F.2d 503, 506 (9th Cir.1993); Camacho v. White, 918 F.2d 74, 79 (9th Cir.1990); Hopper v. United States Parole Comm'n, 702 F.2d 842, 845 (9th Cir.1983); Biggs v. California, 2006 WL 2621057, at *3-4 (E.D.Cal. Sept.12, 2006); William v. Board of Prison Terms, 2006 WL 463128, at *10 (E.D.Cal. Feb.24, 2006), adopted, 2006 WL 845594 (E.D.Cal. Mar.30, 2006). Here there is no need to determine whether the alleged delay was unreasonable, because petitioner has failed to allege any possibility of prejudice.

Finally, petitioner argues that the "only appropriate remedy" would be his "immediate release on parole." Petition at 39. When habeas relief is warranted the district court has considerable discretion in fashioning a remedy "tailored to the injury suffered from the constitutional violation ..." United States v. Morrison, 449 U.S. 361, 364 (1981). The Supreme Court has stated that "[f]ederal habeas corpus practice, as reflected by the decisions of this Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus

matters 'as law and justice require.' " <u>Hilton v. Braunskill</u>, 481 U.S. 770, 775 (1987) (internal quotation marks omitted).

Contrary to petitioner's argument, when a suitability hearing has been delayed the "only remedy" required by law and justice would not be an immediate release. An order for an immediate hearing would also be an appropriate, and more likely, remedy. Petitioner however has already received the delayed hearing at issue.

For all these reasons, petitioner is not entitled to relief on this claim.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 3, 2009

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE